DIELSIE THOMAS, Admx. *et al.*

*v.*

GIDEON MILLER *et al.*

*Filed at Ottawa March 28, 1896.*

1. WILLS—*construction as to quantity of estate created by certain words.* A life estate only, with limitation over, upon the death of the life tenant, to the heirs of the testator then living, is given by a bequest to the testator's son, adding that "in case of his death without living heirs of his own the whole shall then revert to my heirs, or should he have heirs of his own body at his decease they shall share equally with the rest of my heirs."

2. SAME—*when heirs take per stirpes under will.* Heirs living at the death of the life tenant take *per stirpes,* and not *per capita,* under a provision that premises on the death of the life tenant shall revert to the testator's heirs.

3. DEEDS—*deed of a mere expectancy passes no title.* Nothing passes by a conveyance of all the interest of a child in premises given by her father's will to another person for life, with reversion to the testator's heirs, where the grantor dies before the termination of the life estate.

4. EXECUTORS AND ADMINISTRATORS—*how far protected in payment of sum as commutation.* A definite annual sum as commutation of a provision for the maintenance of a person may be paid by an executor with the approval of the court, where the sum is reasonable.

APPEAL from the Circuit Court of Peoria county; the Hon. T. M. SHAW, Judge, presiding.

This was a bill brought by the appellants, the widow, children and administratrix of John A. Thomas, deceased, for the assignment of dower and partition of the east half of the south-east quarter of section 31, township 10, north, range 7, east of the fourth principal meridian, which Thomas acquired by purchase; also the north-west quarter of section 8; also fifty-five acres of the south-west quarter of section 5, being that part lying south of the Peoria and Knoxville road; and also the south-east quarter of the south-east quarter of section 16, all in township 9, north, range 7, east of the fourth principal meridian, in Peoria county, in which it is claimed by the bill Thomas

acquired title in fee simple, by devise from his father, Gideon Thomas, deceased. Answers were put in to the original bill, and the cause was referred to the master. The evidence was taken and the master filed his report, to which appellants filed exceptions. Before the cause was brought to a hearing a cross-bill was filed, alleging that John A. Thomas was executor of the will of his father, Gideon Thomas, and praying for an accounting as such executor, and seeking to charge the estate of John A. Thomas with certain personal property which had come to his hands as such executor. An answer was filed to the cross-bill, a reference to the master, and a report of the master charging the estate of John A. Thomas with $1680.97, received as executor of the will of Gideon Thomas, and refusing to charge the estate of John A. Thomas with an item of $3500 claimed in the cross-bill. To this report of the master on the cross-bill appellants filed exceptions as to the findings as to liability of the estate of John A. Thomas for the item of $1680.97, and appellees filed exceptions to the findings as to the $3500 item claimed. A hearing was had, and the court below overruled all the exceptions filed to both reports, and rendered a decree in conformity with the two reports of the master. Phœbe Thomas prayed an appeal and appellees assign cross-errors.

John A. Thomas qualified as executor under the will, and letters testamentary were issued to him. From the personal property he paid all the debts and legacies. Edrick T. Thomas returned from Oregon in 1861, and John A. Thomas, as executor, paid him, in addition to the $1000 legacy, $3500 in satisfaction of his right to maintenance during his life, as provided in the fourth clause of the will, and took credit for this payment in his account as executor. The right to a credit for this sum is disputed. The accounts of John A. Thomas as executor, filed in the county court, show that after paying all debts and legacies and the $3500 to Edrick T.

Thomas there still remained $1680.97 in his hands as executor, for which sum the decree in this case charges his administratrix.

John A. Thomas, the residuary legatee, was the youngest son of Gideon Thomas. He was married a short time before the will was executed, and died intestate in 1894, leaving Dielsie Thomas, his widow, who was appointed administratrix of her husband's estate, and Charles V. Thomas, Fannie Lattin, Homer Thomas, Lauren Thomas, Lucy A. Thomas, Etta F. Thomas and Bertrand Thomas, his children and only heirs surviving, who are all joined as complainants in the original bill and as defendants in the cross-bill.

W. T. WHITING, for appellants:

The intention, in the absence of latent ambiguity, must be determined alone from the language of the will. *Daws* v. *Swan*, 4 Mass. 208; *Taubenhan* v. *Dunz*, 125 Ill. 524; *Hamlin* v. *Express Co.* 107 id. 443.

Section 13 of the Conveyance act has no application in the construction or operation of the terms of the will before us. . *Walker* v. *Pritchard*, 121 Ill. 221; *Wolfer* v. *Hemmer*, 144 id. 554.

The absolute fee being intended to vest immediately upon the death of the testator, the death of the first devisee contemplated was necessarily his death in the life of the testator. *Briggs* v. *Shaw*, 9 Allen, 516; *Freeman* v. *Cort*, 96 N. Y. 68; *Moore* v. *Lyons*, 25 Wend. 118; *Siddons* v. *Cockrell*, 131 Ill. 653.

The word "heirs" includes and designates the persons upon whom the law would cast the inheritance in case of intestacy. *Ryan* v. *Allen*, 120 Ill. 648; *Rawson* v. *Rawson*, 52 id. 62.

In all cases where the fee is given in the first instance, as it is in the case at bar, the words in form of a contingency are read as applying exclusively to the happening of the death in the lifetime of the testator. 3 Jarman on

Wills, (R. & T. ed.) 643; Hawkins on Wills, 258; 2 Powell on Devises, 765; *Clayton* v. *Lowe*, 5 B. & A. 636; *Rickards* v. *Gray*, 6 Houst. (Del.) 232; *Gee* v. *Mayor*, 79 E. C. L. 735; *Doe* v. *Sparrow*, 13 East, 363; *Barrell* v. *Barrell*, 38 N. J. Eq. 60; *Dorsey* v. *Dorsey*, 9 Md. 31; *Aspinwall* v. *Andus*, M. & G. 912; *Fitzwater's Appeal*, 94 Pa. St. 141; *Caldwell* v. *Skelton*, 13 id. 152; *Hill* v. *Hill*, 5 G. & J. 87; *Briggs* v. *Shaw*, 9 Allen, 516; *DeCosta* v. *Kein*, 3 Russ. 360; *Brownfield* v. *Wilson*, 78 Ill. 467; *Wolfer* v. *Hemmer*, 144 id. 554; *Clarke* v. *Henry*, L. R. 11 Eq. 222; *Jackson* v. *Robins*, 16 Johns. 587; *Gibson* v. *Walker*, 20 N. Y. 476; *Barker* v. *Cocks*, 6 Beav. 82.

In the interpretation of wills such a construction will be given as to give an estate in fee to the first donee. This rule has been recognized and applied in a number of testamentary cases by this court.   *Giles* v. *Anslow*, 128 Ill. 187; *Leiter* v. *Sheppard*, 85 id. 243; *Sherman* v. *Wooster*, 26 Iowa, 277; *Jones* v. *Jones*, 124 Ill. 254.

The word "estate," used by the testator in conferring the fee in his son John A., is a word of comprehensive import, and must be given its full significance. 2 Jarman on Wills, 364; 1 Redfield on Wills, 442; *Hinckley* v. *Primm*, 41 Ill. App. 579.

The fact that personal property was included in the devise and was intended by the testator to go with the real estate, is a conclusive indication that the absolute title in fee to the property was intended to be given to whomsoever would take the estate upon his death. *Leiter* v. *Sheppard*, 85 Ill. 242; 1 Redfield on Wills, (3d ed.) 421, 422; *Giles* v. *Anslow*, 128 Ill. 185; *Charter* v. *Otis*, 41 Barb. 525; *Johnson* v. *Johnson*, Munf. 546; *Morrison* v. *Sample*, 6 Binn. 94.

No remainder can be limited after an estate in fee. *Jackson* v. *Robins*, 16 Johns. 589; *Wolfer* v. *Hemmer*, 144 Ill. 554; *Ide* v. *Ide*, 5 Mass. 500.

A fee being given to the first devisee by express terms, a devise over cannot take effect as an executory devise, for the reason that the devise over is inconsistent

with the absolute interest given to the first devisee. *Wolfer* v. *Hemmer*, 144 Ill. 554; 4 Kent's Com. 270; 2 Redfield on Wills, 277.

SHEEN & GRAY, for appellees:

The whole error consists in treating death as the contingency implied in the words "and in case of his death without heirs of his own," instead of referring those contingent words to that which is a contingency, viz., "without living heirs of his own," or having "heirs of his own body at his decease." *Boyd* v. *Strahan*, 36 Ill. 355; *Bergan* v. *Cahill*, 35 id. 160; *Johnson* v. *Johnson*, 98 id. 564; *Hamlin* v. *Express Co.* 107 id. 443; *Walker* v. *Pritchard*, 121 id. 221; *Kauffman* v. *Breckenridge*, 117 id. 305; 4 Kent's Com. 4.

We think the remainder of the estate should be divided *per capita*. *Pitney* v. *Brown*, 44 Ill. 364.

We think the remainder is contingent, because the persons who were to take would not be known until the death of John A. Thomas, as not till then could he have "heirs of his body," or the fact be known whether he had heirs of his body. *Bates* v. *Gillett*, 132 Ill. 287.

The word "equally," used in the sixth item of the will, imports an intention that the heirs shall share *per capita*. *Richards* v. *Miller*, 62 Ill. 425.

DAN. F. RAUM, for appellees Louise M. Hopkins, Aaron Hopkins, Edward Barfoot and Mary Barfoot:

A will should be construed so as to give effect and operation to every word and provision in it. *Welsch* v. *Bank*, 94 Ill. 200.

The broadest significance that has been placed upon the word "estate" is, that when used in a will it will pass whatever interest the testator has in the property, unless there be some words to restrain its general meaning. 3 Greenleaf's Cruise on Real Prop. chap. 11, secs. 30, 31, 37, 38, and chap. 13, secs. 38-40; Hawkins on Wills, 131; *Lambert's Lessees* v. *Paine*, 3 Cranch, 97.

This is not a case where words of inheritance are expressly used, and a fee simple has been disposed of to one person in clear and concise language and afterwards taken away or modified by a subsequent clause. *Wolfer v. Hemmer*, 144 Ill. 562; *Dean v. Kuehn*, 64 Wis. 293.

Section 13 of the Conveyance act is substantially the same as 1 Vict. chap. 26, sec. 28, and was adopted by the Revised Statutes of 1845, and it destroyed and rendered nugatory all the common law rules as to devises without words of limitation. Hawkins on Wills, 130-139; *Dean v. Kuehn*, 64 Wis. 293.

John A. Thomas takes only a life estate under the will, in accord with the reasoning of the following cases: *Hart v. McCartney*, 18 Ill. 130 ; *Siegwald v. Siegwald*, 37 id. 435 ; *Roundtree v. Talbot*, 89 id. 249; *Hamlin v. Express Co.* 107 id. 443; *Siddons v. Cockrell*, 131 id. 655; *Schaefer v. Schaefer*, 141 id. 337; *Chiles v. Bartleson*, 21 Mo. 344 ; *Johnson v. Johnson*, 98 Ill. 564.

Isaac C. Edwards, and Dan. F. Raum, for appellees Edward E., Calvin and Effie J. Davison.

Mr. Chief Justice Craig delivered the opinion of the court :

There is no controversy over the eighty-acre tract of land which John A. Thomas acquired by purchase. The controversy in the circuit court and in this court is in regard to the construction of the will of Gideon Thomas, deceased. In 1856 Gideon Thomas, a farmer of Peoria county, then sixty-five years old, owning a farm of two hundred and fifty-five acres and a large amount of personal property, executed his will. In 1861 he died seized of the farm and personal property valued at $12,000. On the 21st day of March, 1861, the will of the deceased was admitted to probate in the county court of Peoria county. It was as follows :

"*First*—I will that all my just debts be fully paid and discharged.

"*Second*—I do hereby give and bequeath unto my oldest son, Obed Severance Thomas, on his return from the territory of Oregon, the sum of $100.

"*Third*—I do hereby give and bequeath unto my daughter Lucy Jessup, intermarried with John Jessup, the sum of $1000, to be laid out for her sole use and benefit by my executors hereinafter named, for and during her lifetime, said executors having the power to re-invest the same under and by the direction of her, the said Lucy Jessup, during her lifetime, and at her decease the same and the profits thereof, in whatever shape it may be, shall descend to her heirs alone.

"*Fourth*—I hereby give and bequeath to my son Edrick T. Thomas the sum of $1000; also his maintenance, when he shall return from Oregon, during his life.

"*Fifth*—I hereby give and bequeath unto my daughter Louisa M. Hopkins, intermarried with Aaron Hopkins, $1000.

"*Sixth*—I do hereby give and bequeath unto my son John A. Thomas the residue of my estate, both real and personal, after the above and foregoing devises, and in case of his death without living heirs of his own the whole shall then revert to my heirs, but should he have heirs of his own body at his decease they shall share equally with the rest of my heirs.

"*Seventh*—I do hereby appoint and constitute my son John A. Thomas, and Henry Childs, my executors, to carry out the provisions of this my last will and testament, and revoke all former wills by me made."

We fully concur with counsel that in the construction of a will the intention of the testator, if not inconsistent with the rules of law, should govern, and that the intention is to be determined from the entire will, all of its provisions taken together, and that the intention, in the absence of latent ambiguity, must be determined from

the language of the will alone.  The question to be deter-
mined in this case is, what did the testator intend by the
sixth clause of his will, viz.:  "I do hereby give and be-
queath unto my son John A. Thomas the residue of my
estate, both real and personal, after the above and fore-
going devises, and in case of his death without living
heirs of his own the whole shall then revert to my heirs,
but should he have heirs of his own body at his decease
they shall share equally with the rest of my heirs."

It is claimed in the argument that the word "estate,"
used by the testator, is a comprehensive term, and that
a proper construction of the word as used would carry
the fee.  At common law the usual mode of devising
property in fee simple was by giving the property to the
devisee, his heirs and assigns forever, but "to him and his
heirs" is all that was technically required.  (2 Redfield
on Wills, 326.)  A devise to a certain person, omitting
the word "heirs," would not, at common law, carry the
fee, but where a person, in framing his will, used the word
"estate" and devised his estate, a broader construction
was given, and it has been held in many cases that where
the word "estate" is used by the testator, it will, in the
absence of qualifying language, pass the fee.  In *Tracy*
v. *Kelborn,* 3 Cush. 557, the terms of the devise were as
follows:  "I give and bequeath to my beloved wife, Clar-
issa Chittendon, *all my estate, both real and personal,* for
her own use and benefit, reserving only sufficient to pay
my debts."  The question arose whether the wife took
an estate in fee, the word "heirs" having been omitted,
and the court held that by the use of the word "estate,"
without words of limitation, a fee was given.  The same
rule was laid down in *Godfrey* v. *Humphrey,* 18 Pick. 537.
In the decision of the case, SHAW, C. J., said:  "It has
long been held that the devise of all a man's estate,
where there are not words to control or restrain its oper-
ation, shall be construed not merely to mean his lands,
but the quantity of interest which he has in them, so as

to pass an estate of inheritance, if he has one." (*Carter v. Horner*, 4 Mod. 89.)   See, also, *Jackson* v. *Robbins*, 16 Johns. 586, where the same rule is laid down; 3 Greenleaf's Cruise on Real Prop. chap. 11, secs. 31-37.

But the common law rule requiring the use of the word "heir" in a devise for the purpose of passing a fee has been changed by section 13, chapter 30, of our statute entitled "Conveyances," which provides, that "every estate in lands which shall be granted, conveyed or devised, although other words heretofore necessary to transfer an estate of inheritance be not added, shall be deemed a fee simple estate of inheritance, if a less estate be not limited by express words, or do not appear to have been granted, conveyed or devised by construction or operation of law." Under this statute a devise of property to A, omitting the word "heirs," unless restricted or qualified by other language in the will, would be sufficient to pass an estate in fee. If, therefore, it be conceded that under the common law the use of the word "estate" in a will has a broader and more comprehensive meaning than if the testator should use the word "property" or "lands," still the use of the word "estate" in a devise, under our statute, cannot be regarded as having any special bearing on the question whether the testator intended to devise a fee or a less estate. If the testator had devised to his son John A. Thomas the residue of his estate after the payment of the specific legacies named in the will, without any qualification whatever, no question could arise in regard to the devisee taking a fee under the will. In other words, if the testator, in drafting the sixth clause of the will, had stopped with the word "devises," in the fourth line, and added nothing more, John A. Thomas would have taken a fee. The difficulty in this case does not grow out of what construction shall be placed on the word "estate" in the first part of clause 6, but it arises from the qualification following the word "devises," in the last part of said clause.

In *Giles* v. *Anslow*, 128 Ill. 187, the will was as follows: "To my wife, Mary Anslow, I do give and bequeath all of which I die possessed, both real and personal, * * * and I do hereby appoint her, my beloved wife, my sole executor. * * * It is further my will, that in case of the death of my wife, Mary, before the settlement of my estate, that my property of which I die possessed shall be equally divided between my two nephews," (naming them.) In passing upon the question what estate passed to the wife under the broad language of the will, the terms of the will devising all the estate of the testator, real and personal, were disregarded and the 13th section of the Conveyance act was cited, and it was then said (p. 194): "Under this statute the first clause of the will before us is clearly sufficient to invest the widow with an absolute estate in fee, and we must hold that she took such an estate, unless the subsequent clauses of the will show a contrary intention. The intention of the testator, which must govern, is to be ascertained from the whole will. If it was intended that a less estate should be taken by the wife, it is wholly immaterial in what part of the will such intention is manifested."

In *Walker* v. *Pritchard*, 121 Ill. 221, where the question arose whether a fee or life estate passed under a will where the word "heirs" was omitted, it was held that at common law the language of the will only gave a life estate in the lands, but in the opinion section 13 of the Conveyance act is set out, which changed the common law. It is there said (p. 233): "So it is a question of construction, from the entire instrument, what estate is given. In the absence of limiting or qualifying words it is a fee, but with such words the instrument is to be construed so as to give effect to the intention of the testator as manifested by the phraseology of the entire instrument, and hence arbitrary rules of common law, applicable to cases where, before the enactment of the statute, a fee was clearly technically given, are not pertinent, for in those

cases there is no question, in the first instance, what estate is given, but it is, a fee being given, what effect have subsequent words of limitation, etc. Here, there being words of qualification and restriction, they are, under the statute, to be considered in determining, in the first instance, whether a life estate or a fee was intended."

But it is claimed in the argument that the language, "and in case of his death without living heirs of his own the whole shall then revert to my heirs, but should he have heirs of his own body at his decease they shall share equally with the rest of my heirs," contained in the sixth clause, shows that the intention of the testator was that the gift over was in substitution of the primary gift in the event of his son's death in the lifetime of the testator. We are unable to concur in that construction. There is nothing in the language of the sixth clause which will sustain that view. Indeed, no such construction can be given to clause 6 of the will without adding thereto the words "during the life of the testator," or other language of similar import, and we are aware of no authority which would authorize the courts, in construing the will, to add anything to any of its provisions. The words, "and in case of his death without living heirs of his own the whole shall revert to my heirs," when given their natural meaning, can only be construed as referring to death at any time. There are two, and only two, contingencies named in the sixth clause of the will. One is death without living heirs of his own; the other is death with living heirs of his body. Nothing whatever is said in the will in regard to the time of the death of John A. Thomas.

In *O'Mahoney* v. *Burdett*, 12 Moak, 22, the will of Jane Brooke contained the following clause: "I bequeath to my sister, Grace L'Estrange, * * * the sum of £1000 in the 3½ per cent Irish stock, for her life, and after her death to her daughter, Grace L'Estrange. If my niece should die unmarried or without children the £1000 I here will, to revert to my nephew, Col. Henry L'Estrange."

The court of appeals in chancery in Ireland declared that
the bequest of £1000 to Grace L'Estrange (Grace O'Maho-
ney) was defeasible in the event of her dying unmarried
or without children at any time.   On appeal this ruling
was approved, and in the decision Lord CAIRNS, among
other things, said:  "In the absence of any authority to
the contrary, I should entertain no doubt that the deci-
sion of the court of appeals in chancery in Ireland was in
accordance with the true interpretation of the will.   A
bequest to A, and if he shall die unmarried or without
children, to B, is, according to the ordinary and literal
meaning of the words, an absolute gift to A, defeasible
by an executory gift over in the event of A dying at any
time under the circumstances indicated, namely, unmar-
ried or without children.   And in like manner a bequest
to X for life, with remainder to A, and if A die unmarried
or without children, to B, is, according to the ordinary
and literal meaning of the words, an executory gift over,
defeating the absolute interest of A in the event of A
dying at any time unmarried or without children.  *  *  *
The direction that if the niece should die unmarried or
without children the £1000 is 'to revert to my nephew,
Col. Henry L'Estrange,' appears to indicate that the leg-
acy was to come back or come away from the niece after
she had held the possession and enjoyment of it, rather
than to imply that the only state of circumstances under
which Col. Henry L'Estrange could take would be a state
of circumstances under which the niece would have had
no enjoyment of the legacy at all.   In other words, the
benefit intended for the nephew appears to me to be in-
troduced through the medium of an executory limitation
over after enjoyment by a previous taker, and not as an
alternative gift, to take effect, if at all, before the period
of enjoyment commences."

In the case under consideration, if John A. Thomas
should die without living heirs of his body the estate was
to revert, or, as said in the case cited, was to come back

or come away from the son, John A. This could not be if the death intended was to occur, as claimed by counsel for appellants; during the lifetime of the testator, as there would be, in that event, no estate in his hands to come back or come away. How could the estate revert or come away from John A. Thomas if it had never gone to him? And it could not go to him until the death of the testator. But without extending the discussion we think it is plain that under the sixth clause of the will the testator intended to give his son John A. Thomas a life estate, with limitation over, upon the death of John A., to the heirs of the testator then living. See *Johnson* v. *Johnson*, 98 Ill. 564.

The circuit court, in its decree, found that under the sixth clause of the will of Gideon Thomas, deceased, John A. Thomas took a life estate in the residue of the estate of Gideon, and upon the death of John A. the remainder then vested in the heirs of Gideon living at the time of the death of John A., *per stirpes.* We regard this finding as correct. Indeed, under a proper construction of the will no other result could be reached.

Lucy Jessup, a daughter of the testator, Gideon Thomas, in 1862 executed a deed to John A. Thomas, in which she and her husband undertook to convey her interest in the lands of which Gideon Thomas died seized, to John A. Thomas. This deed contained covenants of title and warranty, and it was claimed on the trial that the interest of one of the children and heirs-at-law of Gideon Thomas passed by the conveyance. Lucy Jessup, the grantor in the deed, died in 1886. At the time the deed was made she had no title to the land, and up to the time of her death she acquired no title, hence nothing passed by the deed. Upon the death of John A., in 1894, the title to the land became vested in the heirs of Gideon. Lucy Jessup was not living and was not an heir, but her children were, and the title passed to them.

Another deed or deeds were made under similar circumstances, before the life estate had been terminated and the remainder vested, but it will not be necessary to refer to them in detail. For the reason heretofore stated nothing passed by such deeds.

It will be observed that the court held the remainder of the estate vested in the heirs of Gideon Thomas living at the death of John A. Thomas, *per stirpes.* That holding is fully sustained by *Kelley* v. *Vigas*, 112 Ill. 242. There the will required the remainder of the estate to be divided equally among the heirs of the deceased. The testator left one daughter and four grandchildren of a deceased son, and it was held that they took *per stirpes.* It was there said (p. 245): "The word 'heir,' it is said, when uncontrolled by the context, designates the person appointed by law to succeed to the estate in question, as in case of intestacy, and so the authorities seem to hold. Who are heirs of a deceased person is determined and declared by statute, and the quantity each shall take, as heir, is also fixed. Observing these rules of construction, it would seem the residue of the estate of the testator should be divided in accordance with the provisions of the statutes, as in cases of intestacy. That being so, the heir-at-law in this case, under the statute, would take the remainder of the testator's property *per stirpes*, and not *per capita.*" See, also, *Henry* v. *Thomas*, 113 Ind. 23.

The master in chancery found, and so reported, that after the payment of all debts and legacies there remained in the hands of John A. Thomas, as executor, $1680.97. The court required the administrator of the estate of John A. Thomas to account for and pay this sum to the heirs of Gideon Thomas. Under the will of Gideon Thomas the personal estate passed to his heirs in like manner as the real estate, and we perceive no objection to the decree as to this sum of money.

The fourth provision of the will provided that Edrick T. Thomas, upon his return from Oregon, should have a

maintenance out of the estate.    The executor paid a certain definite sum as commutation, amounting to $350 per annum, which was approved by the court.    We perceive no error in this part of the decree.    The sum paid was reasonable, and there was no such departure by the executor from the requirements of the will as to require his estate to refund this money, which seems to have been honestly and fairly paid out.

The decree of the circuit court will be affirmed.

*Decree affirmed.*