### Ozro G. Auger et al. v. Robert L. Tatham et al.

1. WILLS—*Construction, Where a Devise is to a Particular Class.*— Where a devise is to a particular class, courts will invoke the aid of the statute to determine what persons constitute the class and follow its provisions as to the quantity they are to take.

2. SAME—*Construction of the Words "Equally" or "Equally Among" etc.*—The words "equally among" or "equally," or "share and share alike," when used in a will, mean a division of the estate per capita; but this meaning of these words may be controlled by the context of the entire will.

3. SAME—*Construction of a Devise to Heirs—Presumptions.*—A devise to heirs, whether to one's own or to heirs of a third person, designates not only the persons who are to take, but the manner and proportion in which they are to take; and when there are no words to control, the law presumes the intention to be that they, as heirs, will take by the law of descent.

4. SAME—*Construction of a Particular Devise.*—Where a testator, among other bequests, bequeathed to five persons as the heirs of a certain deceased person, each the sum of $25,000, and afterward by a codicil increased the amount to $50,000 each, it was held that the devisees took, collectively, the sum of $50,000 to be distributed among them, as provided by the statute in cases of intestacy.

5. SAME—*Intention not to be Varied by Parol Evidence.*—Where there is no latent ambiguity in a will, parol evidence is not admissible to vary its construction.

6. SAME—*Costs of Suits for the Construction of Wills.*—As a general rule, if the testator has expressed himself so ambiguously as to create a difficulty which makes it necessary to go into a court of chancery to get a construction of the will, or to remove the difficulty, the costs of the litigation must be borne by the estate, and the general residue is the primary fund for the payment of such costs.

**Bill to Obtain a Judicial Construction of a Will.**—Appeal from the Circuit Court of Cook County. Heard in this court at the March term, 1900. Affirmed in part, reversed in part, and remanded. Opinion filed November 22, 1900.

SAMUEL W. NORTON, attorney for appellants.

WILSON, MOORE & MCILVAINE, attorneys for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Ozro G. Auger and five other persons, claiming to be the children and sole heirs at law of Lucy Auger, deceased, and legatees under the will of Albert A. Munger, deceased, filed their bill of complaint against other legatees and devisees, and the executors of the will, for the purpose of obtaining a judicial construction of certain clauses in the will and a codicil thereto. Albert A. Munger, deceased, was an unmarried man and, before and at the time of his death, was a resident of Cook county in this State. He made his last will October 10, 1893, and a codicil thereto July 8,

1897. He died August 26, 1898, and September 27, 1898, his will was probated and letters testamentary were issued to his executors. The real and personal estate bequeathed and devised by the will is admitted to be of value not less than $2,500,000. The will, after directing payment of the funeral expenses, and debts of the testator, and making, in clauses second to sixth, both inclusive, certain specific legacies, contains the following:

"Seventh. I hereby give and bequeath unto Alexander A. McKay, George A. McKay, Cornelia Thomas, Isadore G. Munger, the heirs at law of Lucy Auger, deceased, Arthur Munger, Gussie Munger Evans, Kate Munger Honn (sister of said Arthur Munger) and Charles Munger, son of Cheney Munger, each the sum of twenty-five thousand ($25,000) dollars, to be paid to them, respectively, by my executors, after my decease.

"Eighth. All the rest, residue and remainder of my property, real, personal and mixed, of every kind and nature whatsoever, and wherever situated, of which I shall die seized or possessed, or in or to which I shall have any right, title or interest at the time of my decease, I hereby give, devise and bequeath unto my cousins, Alexander A. McKay and George McKay, to have and to hold the same as their absolute and individual property, in fee simple, forever, share and share alike."

The codicil, omitting the formal introductory and concluding parts, is as follows:

"First. I hereby will and direct that the bequests to Cornelia Thomas, Isadore G. Munger, the heirs at law of Lucy Auger, deceased, Arthur Munger, Gussie Munger Evans, Kate Munger Honn and Charles Munger, made in and by item seven of said original will be increased from twenty-five thousand dollars, as therein provided, to the sum of fifty thousand dollars each, said sum of fifty thousand dollars to be paid to each of the persons named in this item one of this codicil in lieu of said sum of twenty-five thousand dollars, by my executors, as therein provided.

"Second. I hereby give and bequeath unto the heirs at law of Colby Munger, deceased, the sum of fifty thousand dollars, to be divided between and paid to the said legal heirs in equal portions, share and share alike, by my executors, named in the said original will, as soon after my decease as practicable."

The bill alleges that Alexander McKay and George A McKay are first cousins of the testator in his mother's line of descent, and that Cornelia Thomas, Isadore G. Munger, Arthur Munger, Gussie Munger Evans, Kate Munger Honn and Charles Munger are his first cousins in the father's line of descent; and that Colby Munger, deceased, and Lucy Auger, deceased, were also his first cousins in his father's line of descent.

The bill also alleges that seven other persons (naming them), who are not named in the will, are first cousins of the testator in his father's line of descent, and that three other persons (naming them), who are not named in the will, are his first cousins in his mother's line of descent. These allegations are admitted by the answer.

The appellants claim that by clause seventh of the will, and clause first of the codicil, they are entitled to $50,000 each; in other words, that as "heirs at law of Lucy Auger, deceased," they take each $50,000, or $250,000 in all; that they take *per capita*. The appellees contend the contrary. The court held against the claim of appellants and dismissed the bill for want of equity.

In Richards v. Miller, 62 Ill. 417, the devise was:

"I give, devise and bequeath to my heirs at law the remainder of my estate."

This was a devise to heirs *simplicitor*, and the rule governing it is thus announced:

"The gift is to a particular class. We must invoke the aid of the statute to determine the persons who constitute the class. When invoked to ascertain the persons to take, we must follow its provisions as to the quantity they shall take."

This rule is thoroughly established in this State, and is well supported by authority. Kelley et al. v. Vigas, 112 Ill. 242.

It was held in the Richards case that the husband of the testatrix took half, and that the descendants of brothers and sisters took only the shares which their parents, if living, would have received. Ib. 426.

Appellees' counsel, however, relies on the use of the words, "each the sum of twenty-five thousand dollars," in the seventh clause of the will, and the words, "said sum of fifty thousand dollars .to be paid to each of the persons named in this item," etc., in the codicil, and the question is, whether these words control, so as to exclude the application of the rule above stated.

In Kelley v. Vigas, 112 Ill. 242, the words of the will in controversy were: "The remainder of my estate to be divided equally among my heirs at law." The testator left one daughter and four grandchildren, his only heirs at law. *Held*, that the heirs took *per stirpes*. The court say:

"It is understood the words 'equal among' or 'equally,' or 'share and share alike,' when used in a will, mean a division of the estate *per capita*, but this meaning of these words may be controlled by the context, and is often done. That is the case here. The testator, by making a bequest of money to his own daughter, and a devise of land to his daughter-in-law, evidently intended to make an equal division of his estate between his daughter and the family of his deceased son, and it is not unreasonable to believe that was all that he meant by the use of the words 'equal among.'" Ib. 245–6.

The word "each," in clause seventh of the will, is not necessarily applicable solely to each of the individuals comprising the class designated "the heirs at law of Lucy Auger." It may be reasonably applied to the designated class. In Ricks v. Williams, 1 Dev. Eq. (N. C.) 3, the testator, after making sundry specific legacies, directed all the residue of his estate to be sold "and the money to be divided equally between my son, Pilgrim L. Williams, and my daughters, Diana, Charity and Elizabeth, and the lawful begotten heirs of the body of my daughter Priscilla." Priscilla left her surviving a daughter and two grandsons. Held, that the property should be divided into five equal parts, each of the surviving daughters to take one-fifth, the daughter of Priscilla one-tenth, the remaining one-tenth to be divided equally between the grandsons. The court say:

Auger v. Tatham.

"I think, in principle, this question was decided at the last term, in the case of Whitfield's Will, (4 Hawks, 393), for if 'heirs,' when applied to personal property, means those who are called by law to succeed to the dead man—they bring with them their representative and collective character; and however the property may be divided among themselves as individuals, comprising a body, they are an unit, and make but one person, the representative of their ancestor or *propositus*, and so, whether they take by descent or purchase, it is designated *personæ*, not *personarum*. He could not have used a more appropriate word than 'heirs of my daughter Priscilla,' to call them in as a stock or share."

In Fisher v. Skillman, 18 N. J. Eq. 229, the will, after directing a sale of the testator's landed property, contains the following:

"Then it is my will, and I direct that the proceeds of these sales, together with all and singular my personal and movable property (except as hereinbefore specifically bequeathed) be equally divided, share and share alike, between my children and their legal heirs, that is to say, to Jacob Skillman, D. Bishop Skillman, William Skillman, Ann Schink and Caroline Halcomb, each a share, and the children and heirs of Abraham L. Skillman, and of Martha Halcomb, and of Caroline Maria Fisher, each a share."

The persons whose names are mentioned were all children of the testator. The court held, referring to another provision in the will, that it was the testator's intention to treat his children equally, and that the children of the testator's deceased children took, collectively, one-eighth.

In Clark v. Lynch, 46 Barb. Sup. Ct. R. 68, 81, the court say :

"When the word 'heirs' is used in a will, and there are no other words to control the presumption, the legal inference is, that it is '*nomen collectivum*;' that it designates the person whom the law appoints to succeed to the inheritance in cases of intestacy, and that legatees thus designated take by representation and not in their own right. This rule is nowhere better or more clearly expressed than by Chief Justice Shaw in Daggett v. Slack (8 Metc. 453), where he says that 'a devise to heirs, whether to one's own or the heirs of a third person, designates not only the persons who

are to take, but the manner and proportion in which they are to take. When there are no words to control the presumption, the law presumes the intention to be that they take, as heirs would take, by the rules of descent.' "

The intention of the testator, when ascertained, must govern, and this is to be determined from the entire will, all of its provisions taken together. Thomas v. Miller, 161 Ill. 60, 66; Boyd v. Strahan, 36 Ill. 355.

All the persons named in the seventh clause of the will who survived the testator, are his first cousins, and Lucy Auger, deceased, sustained the same relation to him. To each of the surviving first cousins named, some of whom may reasonably be presumed to be married and the parents of children, he bequeaths $25,000. Was it his intention that each of the five children of his first cousin, Lucy Auger, deceased, should have the same share that presumably he would have bequeathed to her, if living? Did the testator intend to make such discrimination in favor of the children and heirs of Lucy Auger, and against his first cousins named in the will? We think not, and this view is strengthened by the second clause of the codicil. Colby Munger, deceased, was a first cousin of the testator, like the others named in the seventh clause of the will, and there is bequeathed to his heirs, collectively, or as a class, $50,000, the sum which, presumably, would have been bequeathed to their father, if living. Taking the provisions of the will and codicils together, we think it was the intention of the testator to treat his first cousins, except the McKays, to whom he devised the residue of his estate after paying legacies, equally. Suppose that Lucy Auger, instead of leaving her surviving five children as her sole heirs, had left twelve or more grandchildren; could it reasonably be contended that each of her children and grandchildren would take equally with the testator's first cousins under the will? We think not. But counsel for appellants relies on the words in the first clause of the codicil, viz., "fifty thousand dollars to be paid to each of the persons named in the will." He contends that the word "persons" applies singly to the individuals comprising the class designated as " the heirs at

law of Lucy Auger, deceased." We are of opinion, as was the court in Ricks v. Williams, *supra*, that the heirs comprise a body, are a unit, and, in legal contemplation, make but one person; and therefore the word "person" may reasonably be applied to them in their collective capacity, and must be so applied, in view of other provisions in the will and codicil manifesting the intention of the testator. As illustrating that words of equality do not necessarily exclude the application of the rule that legatees designated as "lawful heirs" take *per stirpes*, the following cases are cited:

In Bassett v. Granger, 100 Mass. 348, cited with approval in Kelley v. Vigas, *supra*, the provision of the will in controversy was:

"I give and bequeath all my personal property of every name and nature, after paying the foregoing legacies, to the heirs of my late husband and to my heirs, *equally.*"

The testatrix left her surviving a sister and six nieces, and nineteen nephews of her deceased husband. Held, that the surviving sister took one-half and the nephews and nieces, collectively, the other half, to be distributed among them equally.

In Balcom v. Haynes, 14 Allen, 204, the devise was:

"I give and devise to my brothers, John W. Haynes, Amos Haynes and Charles Haynes, and my sisters, Susan Boyd, wife of Stephen Boyd, Ruth Boyd, wife of Warren Boyd, and the heirs of Lydia Walkup, and their heirs, respectively, all the rest and residue of my real and personal estate, to be divided *in equal shares* between them."

There were five heirs of Lydia Walkup, each of whom claimed one-tenth of the residue, which would be the portion falling to each, if they took *per capita*, but the court held that they took *per stirpes*, and that their share collectively was only one-sixth of the residue. The court say:

"The addition of the words 'to be equally divided between them' might indeed have the effect of giving it to them *per capita*, if those words necessarily applied to the heirs *inter sese*. But such is not the case; for, according to the construction of either of the contending parties, the

residue is to be divided in equal shares, and the only question is among whom it is to be divided; and the words 'to be equally divided between them' may be satisfied by being applied to the division between the classes, and not to that between the individuals."

In Vincent v. Newhouse, 83 N. Y. 505, the testator devised to his wife for her life 169 acres of land, and willed as follows:

"I do order and direct, that at the death of my said wife the said one hundred and sixty-nine acres of land be sold by my executor, and the proceeds be *equally divided* between my daughters Sylvia, Harriet and Janetta, and the children and heirs of my sons Benjamin and Sumner, and of my daughter Cynthia, *share and share alike;* and if either of the heirs above mentioned and intended shall die after the date of this will, and before the said sums are paid, then the shares of the one so dying, without issue, shall be equally divided among the other heirs, above named."

It was claimed by the children of Benjamin that they took *per capita*, but the court held otherwise, saying:

"The beneficiaries are in the testator's mind, not as individuals, but as a body or class, together representing or standing for his own child; and so together taking of his bounty a share equal to that given to his own child."

In Lyon v. Acker, 33 Conn. 222, the devise ran thus:

"I give to my three daughters, Mary, Susan and Josephine, and the children of my son Samuel, my homestead, to them and their assigns forever, *share and share alike.*"

There were four sons of Samuel, deceased, and each of them claimed one-seventh of the homestead—that they took *per capita.* The court held that the children of Samuel were mentioned in the will as a class, and that they took *per stirpes,* saying:

"That the testatrix intended to discriminate against her daughters and in favor of her son's children, will certainly not be presumed; and, when we look at the language of the will or the circumstances of the case, we fail to discover anything to indicate the existence of any such intention. Had she made her son the devisee, it would require clear and unmistakable language to give him four-sevenths of the property. Has she done any more, or did she intend

to do any more than to give the father's share to the children? We think not."

In Raymond v. Hillhouse, 45 Conn. 467, the devise was:

" All the residue of my estate, real and personal, I give and devise to the following named *persons to be divided equally among them:* My sisters Rachel and, Sarah, the grandchildren of my brother William, and the grandchildren of my deceased sisters, Delia and Mary," etc.

*Held,* that the grandchildren took *per stirpes.* In the opinion the court say:

" The phrase, ' the following named persons,' it is true, raises an expectation that the specific names of the beneficiaries are about to be given, but in this case the testator, along with the names of his two living sisters, gives the names of his two deceased sisters, and of his deceased brother, whose grandchildren are to receive the legacy. Now, did the testator mention the names of the deceased persons only by way of designating the individual grandchildren who were to take, or were the names thus given as the proper heads of the classes who were thus to take? The latter construction is at least as natural and reasonable as the former." * * * "Neither do the words 'to be divided equally among them' necessarily import a division of the property among individuals, for they apply just as readily and appropriately to a division among classes."

Taking the seventh clause of the will alone, we think it clear that under that clause the children of Lucy Auger deceased, would take *per stirpes,* and we think it apparent that, at the time of making the codicil, the testator had changed his intention in only three particulars, viz.: by the original will he had not only included the McKays in the legatees mentioned in the seventh clause, but had, by the eighth clause, devised to them the residue of his property. By the codicil he omits them, as legatees, from the seventh clause of the will. Also, by the codicil, the legatees mentioned in the seventh clause of the will are each increased to $50,000, and a legacy of $50,000 is bequeathed to the heirs at law, collectively, of Colby Munger, deceased.

. We are of opinion that under the seventh clause of the will and the codicil, taken together, the heirs at law of Lucy Auger, deceased, take, collectively, the sum of $50,000, to be dis-

tributed among them as provided by the statute in cases of intestacy.

Counsel for appellants cites McCartney v. Osburn, 118 Ill. 403, in which the court held that the words "the heirs of the said Henrietta," meant the children of Henrietta. The court so held, because the testator had, in his will, used the words child and heir, children and heirs, interchangeably and synonymously. The question seems to have been of little or no importance in the case. The court say:

"We can readily conceive of a state of facts that might well have happened under the will, in which this difference of construction would have become important, yet, under the circumstances as they have actually transpired, it can be of little importance if we assume, as both parties seem to do, that the time has already arrived when the objects of the testator's bounty are to be determined; for whether the one or the other construction prevails, the same parties in either case will take." Ib. 413–14.

The distinction between a devise to A and the lawful heirs of B, and a devise to A and the children of B, is too well settled to require the citation of authorities. There is nothing in the will under consideration indicating that the testator used the words "heirs at law" otherwise than in their legal meaning.

Appellants' counsel objects that the cross-examination by appellees' solicitor of Allison W. Auger, witness for appellants, was improper. We find no objection to such cross-examination in the abstract. Robert L. Tatham, called as a witness by appellees, testified that he was the testator's attorney and drafted the will and codicil, in pursuance of the testator's instructions. He was then examined, and answered as follows:

Q. "Was anything said by Mr. Munger as to why he gave as legatees the designation of 'heirs at law of Lucy Auger, deceased,' instead of giving the names?" A. "There was."

"What did he say?" A. "He said that he did not know the names of the Auger children, nor did he know how many there were of them. If I may go a little further I will explain. He said Mrs. Auger had died, leaving a number of children, and he wanted to provide for them."

Q.  "Was that all that he said in that connection?"    A.
"Well, that is the substance, except that it was talked over
a little more in detail, and he stated, too, why he did not
know their names, or how many there were, because their
family had not been on intimate terms with them, and he
had not seen them and knew very little of them."

Q.  "What date was this conversation with reference to
the drawing of the will?"   A.   "Immediately preceding the
will.   By that I mean perhaps within a day or two before
the execution of it, while the will was being prepared."

The Court:  "It was a part of the instructions on which
he drew it?"   A.   "Yes, sir."

This evidence was admitted over the objection and excep-
tion of appellants' counsel.   There is no latent ambiguity
in the will.   We are of opinion that the evidence was im-
properly admitted.   2 Jones on Evidence, Sec. 491; Can-
field v. Bostwick, 21 Conn. 550, 556; Tucker v. Seaman's
Aid Society, 7 Metz. 188; Thomas v. Miller, 161 Ill. 60, 66.

We are unable to perceive, however, that the evidence
could have been in the least prejudicial to appellants, whose
counsel says in his argument, "The testimony of the witness
Tatham, if admissible, would establish beyond question the
claim of appellants."

"The cause was heard before the chancellor, and it is
presumed he considered only competent evidence in render-
ing the decree."   Dunn v. Berkshire, 175 Ill. 243, 250.

When appellants rested their case, the court granted
them leave to offer testimony on the question of solicitor's
fees, and the hearing was suspended till January 13, 1900.
At the latter date appellants' solicitor offered to prove the
reasonable and customary value of his services in the cause,
for the purpose of having the same taxed as costs, and for
an order on the executors to pay the same from the residu-
ary funds of the estate, which offer the court refused.
Appellants' solicitor then moved to have the costs already
accrued taxed against the estate, and for an order on the
executors to pay the same from said residuary fund, which
motion the court overruled.

In Missionary Society v. Mead, 131 Ill. 338, 375, the court
say:

"As a general rule, if the testator has expressed his intention so ambiguously as to create a difficulty which makes it necessary to come into the court of chancery to give a construction to the will, or to remove the difficulty, the costs of the litigation must be borne by the estate, and the general residue is the primary fund for the payment of such costs."

See, also, Ingraham v. Ingraham, 169 Ill. 432, 471, where the same rule is announced, and Lombard v. Witbeck, 173 Ill. 396, 412.

In Ingraham v. Ingraham, *supra*, the party filing the bill was defeated in the Circuit Court and, on appeal by him, the decree of the lower court was substantially affirmed. We are of opinion that there is sufficient ambiguity and uncertainty in the language of the will under consideration to justify an application to a court of equity for its construction, and therefore, that the court, before dismissing the bill, should have admitted the offered evidence, and upon proper proof made, should have allowed to appellants a reasonable solicitor's fee, and that the same, when allowed, should be taxed against the estate, together with other costs of the cause, and paid by the executors from the general residue of the estate. The decree, in so far as it orders the bill of appellants dismissed for want of equity, will be affirmed, but in so far as it decrees a recovery by the appellees of their costs from appellants, it will be reversed and the cause will be remanded for further proceedings in accordance with this opinion. Appellants' costs of this court will be taxed against the estate which was of Albert A. Munger, deceased, to be paid by his executors from the general residuary fund of said estate, in due course of administration.

Affirmed in part and reversed in part.